**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

CHRISTINA W.,                          )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )          1:23CV883
                                       )
MARTIN J. O'MALLEY,                    )
Commissioner of Social                 )
Security,                              )
                                       )
            Defendant.[1]              )


**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Christina W., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  (Docket Entry 1.)  The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief)).  For

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit.  Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 249-65), alleging a disability onset date of July 9, 2021 (see Tr. 249, 253).  Upon denial of those applications initially (Tr. 96-21, 160-69) and on reconsideration (Tr. 122-43, 171-79), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 180).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 41-95.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 18-40.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 246-48), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.  [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2026.

2.  [Plaintiff] has not engaged in substantial gainful activity since July 9, 2021, the alleged onset date.

. . .

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

3.    [Plaintiff] has the following severe impairments: status-post breast cancer with right axillary nodal metastasis; fatigue and neuropathy due to residual effects of chemotherapy treatment; obesity; depression; and anxiety.

. . .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    . . . [Plaintiff] has the residual functional capacity to perform light work . . . except that she can lift and carry 20 pounds occasionally and 10 pounds frequently; [she] can sit for 6 hours in an 8-hour day, with alternating to standing for 5 to 10 minutes after every 4 hours of sitting; she can stand for 6 hours in [an] 8-hour day, with alternating to sitting for 5 to 10 minutes after every 1 hour of standing; [she] can walk for 6 hours in an 8-hour day, with alternating to sitting for 5 to 10 minutes after every 1 hour of walking; she can push and pull as much as she can lift and carry; [she] can operate foot controls with her right foot frequently; she can operate foot controls with her left foot frequently; [she] can operate hand controls with her right hand frequently; she can frequently reach overhea[d] to the right side; for all other reaching she can reach frequently to the right; [she] can handle items frequently with her right hand; she can frequently finger with her right hand; [she] can frequently feel on the right; she can frequently climb ramps and stairs; she can occasionally climb ladders, ropes or scaffolds; she can frequently crawl; [she] can frequently work at unprotected heights; she can have frequent exposure to moving mechanical parts; [she] can frequently be in [sic] vibrations; she is able to perform simple, routine tasks; [she] can perform simple work-related decisions; she can frequently interact with supervisors and coworkers; [she] can occasionally interact with the public; she can make simple work-related decisions regarding dealing with changes in the work setting; and [her] time off-task can be accommodated by normal breaks.

. . .

3

6.  [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from July 9, 2021, through the date of this decision.

(Tr. 24-33 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the

4

correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

5

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and

7

then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignment of Error

In Plaintiff's first and only issue on review, she maintains that "[t]he ALJ erred by failing to adequately account for the vocationally limiting effects of Plaintiff's well-documented

---

continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

fatigue in the RFC." (Docket Entry 11 at 5 (bold font and block
formatting omitted).) More specifically, Plaintiff contends that,
"[t]hough the ALJ found that [Plaintiff]'s fatigue resulting from
the residual effects of her chemotherapy treatments is a severe
impairment" (id. (citing Tr. 24)), "the ALJ makes a conclusory
finding that any off-task time would be accommodated by normal
breaks" (id. at 5-6 (citing Tr. 26)), which amounted to a finding
"that [Plaintiff]'s fatigue would have no vocational impact at all"
(id. at 6). In Plaintiff's view, "[t]he ALJ's failure to justify
why an accommodation for breaks, time off-task or absences was not
needed due to [Plaintiff]'s fatigue was harmful as there is ample
support in the treatment record for her testimony regarding th[o]se
symptoms." (Id.; see also id. at 5-7 (describing Plaintiff's
statements and evidence relating to her fatigue that she believes
warrants limitations to breaks, time off-task, or absences in RFC
(citing Tr. 54, 59-61, 82-83, 335, 524, 527, 577, 591, 742, 800,
878, 882, 913, 954, 988, 1093-95, 1182, 1288)).) According to
Plaintiff, "[g]iven the potentially outcome determinative nature of
[Plaintiff]'s fatigue and the resulting limitations, the ALJ needed
to accurately address th[o]se symptoms and the resulting
limitations in his decision." (Id. at 6 (citing Hunter-Tedder v.
Berryhill, No. 5:17CV53, 2017 WL 5759941, at *3 (W.D.N.C. Nov. 28,
2017) (unpublished), and Holland v. Commissioner of Soc. Sec.
Admin., No. 17CV1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25,

2018) (unpublished)); see also id. at 7-9 (additionally citing Woody v. Kijakazi, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (unpublished), Hernandez v. Kijakazi, No. 5:21CV267, slip op., at 14-17 (E.D.N.C. Sept. 13, 2022) (unpublished), and McDonald v. Saul, No. 7:19CV135, slip op., at 7-12 (E.D.N.C. Aug. 18, 2020) (unpublished), in support of related arguments).) For the reasons explained in more detail below, Plaintiff's contentions lack merit.

RFC measures "the most a claimant can do despite [any physical and mental] limitations." Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that]

10

conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," id. at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's chemotherapy-related fatigue (A) qualified as a "severe" impairment (Tr. 24) but (B) did not cause greater limitations than the reduced range of light work reflected in the RFC (see Tr. 26).

First, the ALJ's analysis of Plaintiff's subjective symptom reporting explains the absence of greater limitations in the RFC to account for Plaintiff's alleged fatigue. The ALJ expressly acknowledged Plaintiff's testimony that, "[w]hen she was receiving chemo[therapy] treatments[, she] was extremely weak" (Tr. 27), that she can walk for 20 to 30 minutes before getting short of breath" and "will then sit or lie down for 20 to 30 minutes or longer" (id.), and that she experienced "2 to 3 episodes of fatigue and weakness per week[, d]uring [which] she [did not] get out of bed" (Tr. 28),[7] but found that Plaintiff's "statements concerning the

---

[7] The ALJ's description of Plaintiff's testimony relating to fatigue episodes presents Plaintiff's testimony as more definitive than the words Plaintiff actually used, as the hearing transcript reflects that Plaintiff mentioned fatigue at the end of her testimony after prompting by her counsel and equivocated about the extent of her fatigue:

> [ATTORNEY:] Are you still having weakness and fatigue from after the cancer treatment or is that all better now?

> [PLAINTIFF:] No, I still have it. . . . It would be like sometimes maybe twice or three times out of the week. It depends on how my body feels because it aches.

11

intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (id.). The ALJ also noted Plaintiff's daily activities, observing that, despite complaints of disabling fatigue, Plaintiff remained able to drive, shop in stores, complete some household chores, handle her finances, read, watch television and videos on her phone, and socialize in-person with others. (See Tr. 25-26.)

Notably, Plaintiff did not challenge the ALJ's analysis of Plaintiff's subjective symptom reporting, beyond stating that, under recent precedent from the United States Court of Appeals of the Fourth Circuit, she could "rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of [her] symptoms." (Docket Entry 11 at 7 (citing Arakas, 983 F.3d at 98, and Oakes v. Kijakazi, 70 F.4th 207, 215 (4th Cir. 2023)).) To the extent Plaintiff intends that contention to mean that the ALJ erred by considering objective medical evidence in analyzing the intensity, persistence, and limiting effects of Plaintiff's fatigue, such an argument misses the mark. Although the Fourth

---

[ATTORNEY:] Okay. So there's an aching. All right. The thing I'm talking about is just kind of really being tired very easily. Is that happening or not?

[PLAINTIFF:] It happens sometimes about maybe three times maybe out of a week I might feel very tired to where I don't even want to get out the bed. I'll go to the bathroom and get back in my bed.

(Tr. 82-83 (emphasis added).)

12

Circuit recently "reiterate[d ] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas, 983 F.3d at 98; see also Oakes, 70 F.4th at 215, long-standing cases containing the substance of that holding, such as Craig and Hines (among others), clarify that, "[a]lthough a claimant's allegations about her [symptoms] may not be discredited solely because they are not substantiated by objective evidence of the [symptoms themselves] or [their] severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers," Craig, 76 F.3d at 595 (emphasis added); see also Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Arakas, Oakes, Craig, and Hines do not compel ALJs to consider only subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of

13

symptoms. _See_ 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) _must_ be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); _see also_ 20 C.F.R. §§ 404.1529(c), 416.929(c) (directing ALJs to assess a claimant's medical history, _medical signs and laboratory findings_, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources). Here, in compliance with _Arakas_, _Oakes_, _Hines_, and _Craig_, the ALJ considered the objective medical evidence as _one part_ of his evaluation of the intensity, persistence, and limiting effects of Plaintiff's alleged fatigue, as the ALJ also considered Plaintiff's improvement in her symptoms as her treatment progressed (_see_ Tr. 28-30), her daily activities (_see_ Tr. 25-26), and the opinion evidence of record (_see_ Tr. 30-32).

Second, the ALJ's discussion of the medical evidence of record cites to substantial evidence to support the lack of additional fatigue-related restrictions in the RFC. The ALJ discussed the following, pertinent evidence:

- "[Plaintiff] can do a broad range of light work because the record shows <u>intact physical function</u> despite a history of . . . fatigue and neuropathy due to residual effects of chemotherapy treatments," such as "no focal neurological deficits," "no motor weakness," "[normal

14

coordination," and "[normal] gait" (Tr. 28 (emphasis added));

- "[Plaintiff] was initiated on chemotherapy on July 13, 2021[, and t]he treatments caused some limitations at first," but "[a] broad light [RFC] is warranted because subsequent notes show improvement[,]" with "[Plaintiff] present[ing] in no acute distress and not ill-appearing," with "no focal neurological deficits, and [normal] gait" (Tr. 29 (emphasis added));

- "[Plaintiff] reported at her sixth cycle of chemotherapy on October 26, 2021, that she was feeling well[, and o]ncologists remarked on November 1, 2021 that [Plaintiff] tolerated treatment well and [] voiced no complaints" (id. (emphasis added));

- "[Plaintiff] underwent a right axillary lymph node dissection on November 23, 2021, . . . [and e]xaminers noted on December 7, 2021 that [Plaintiff] felt reasonably well except for ongoing pain and discharge," as well as "reported the following day that no nodes were positive for disease, and that [she] was otherwise doing well" (id. (emphasis added));

- "[Plaintiff] elected to undergo adjuvant radiation therapy on January 5, 2022[,]" and, although "Emily Douglas, M.D., wrote [Plaintiff] out of work for the duration of her radiation treatments[, t]h[at] opinion is not persuasive because Dr. Douglas did not discuss [Plaintiff]'s limitations in any detail or support the limitations with any citations to the record, and because her opinion is temporary in nature" (id. (emphasis added));

- "on March 22, 2022[,] . . . [Plaintiff] still had some numbness and soreness in her right axilla and arm since surgery, but she had completed radiation[, ] was healing well[,] . . . [h]er fatigue was mild and stable, and [she] was

15

tolerating Herceptin and Perjeta treatments <u>well</u>"
(Tr. 30 (emphasis added));[8] and

- "[oncologists] again noted on May 2, 2022 that
[Plaintiff] was tolerating [Herceptin and Perjeta]
<u>well</u>" and, "on June 14, 2022[,] . . . [she] was
tolerating chemo[therapy] med[ication]s <u>without
significant side effects</u>" (<u>id.</u> (emphasis added)).

The ALJ's citation of the above-quoted evidence clarifies why,
notwithstanding finding Plaintiff's chemotherapy-related fatigue a
severe impairment (<u>see</u> Tr. 24), the ALJ did not include greater
fatigue-related limitations in the RFC (<u>see</u> Tr. 26).

Third, the ALJ's evaluation of the persuasiveness of the
opinion evidence additionally supports the ALJ's decision not to
include greater fatigue-related restrictions in the RFC. The state
agency medical consultants each limited Plaintiff to <u>light</u> work

---

[8] Although not specifically noted by the ALJ (<u>see</u> Tr. 26-32), Plaintiff's
radiation oncologist rated Plaintiff's level of functioning using the Eastern
Cooperative Oncology Group Scale of Performance Status ("ECOG") and her fatigue
using version 5.0 of the Common Terminology Criteria for Adverse Events ("CTCAE")
after every radiation treatment. (<u>See</u> Tr. 878, 881-80, 883, 892.) Plaintiff's
scores ranged from ECOG Grade 0 and CTCAE Grade 0 during the first two weeks of
her radiation treatment (<u>see</u> Tr. 883, 892), to ECOG Grade 1 and CTCAE Grade 1
during the last two weeks of treatment (<u>see</u> Tr. 878, 880-81). "The ECOG Scale
delineates scores from Grade 0 to 5[,] and . . . Grade 0 means the individual can
be '<u>fully active</u>, able to carry on all pre-disease performance <u>without
restriction</u>,' and Grade 1 means the individual is 'restricted in physically
<u>strenuous</u> activity but ambulatory and able to carry out work of a <u>light or
sedentary</u> nature, e.g., light house work, office work.'" <u>David M. v. Saul</u>, No.
1:20CV1184, 2021 WL 4055159, at *15 n.8 (D.S.C. Apr. 15, 2021) (unpublished)
(some internal quotation marks and brackets omitted) (emphasis added) (quoting
<u>Franco v. Berryhill</u>, No. 16CV9671, 2017 WL 3034625, at *3 n.3 (S.D.N.Y. July 18,
2017) (unpublished) (in turn quoting "ECOG Performance Status," ECOG-ACRIN Cancer
Research Group, https://ecog-acrin.org/resources/ecog-performance-status/)),
<u>recommendation adopted sub nom. Moon v. Kijakazi</u>, 2021 WL 3828664 (D.S.C. Aug.
27, 2021) (unpublished). Similarly, CTCAE rates the severity of adverse events
from medical treatment from Grade 1 to 5, with Grade 1 characterized as "[<u>m]ild</u>;
<u>asymptomatic or mild</u> symptoms; clinical or diagnostic observations only;
<u>intervention not indicated</u>." "Common Terminology Criteria for Adverse Events
(CTCAE) Version 5.0," U.S. Dep't of Health & Human Servs., https://ctep.
cancer.gov/protocoldevelopment/electronic_applications/docs/
ctcae_v5_quick_reference_5x7.pdf (last visited August 19, 2024) (emphasis added).

with postural and manipulative limitations but <u>without any</u>
<u>allowances for additional breaks, off-task time, or absence</u>. (See
Tr. 103, 117, 128, 139.)  In turn, the ALJ found those opinions
"persuasive," noting specifically that "a <u>light</u> [RFC] is consistent
with [Plaintiff]'s history of chemotherapy with residual neuropathy
and <u>fatigue</u>." (Tr. 31 (emphasis added).)  Moreover, beyond Dr.
Douglas's willingness, at Plaintiff's request (<u>see</u> Tr. 741) to
temporarily write Plaintiff out of work for the duration of her
radiation treatment (<u>see</u> Tr. 742), which (as previously discussed)
the ALJ did not find persuasive (<u>see</u> Tr. 29), none of Plaintiff's
medical providers opined that Plaintiff's fatigue necessitated <u>any</u>
limitations (let alone limitations greater than those reflected in
the RFC), which significantly undermines Plaintiff's argument, <u>see</u>
<u>Dakota J. M. v. Kijakazi</u>, No. 1:22CV520, 2023 WL 6218211, at *6
(M.D.N.C. Sept. 25, 2023) (unpublished) (Peake, M.J.) (rejecting
the plaintiff's argument "that the ALJ failed to include RFC
limitations that account[ed] for [the p]laintiff's fatigue," where
the Court found "[s]ignificant[]" that "both [s]tate agency medical
consultants opined that, despite [the plaintiff's] impairments,
[he] could perform light work, and the record contain[ed] <u>no</u>
<u>medical opinion evidence to the contrary</u>" (emphasis added)
(internal quotation marks and brackets omitted)); <u>Ford v. Kijakazi</u>,
No. 2:22CV1003, 2022 WL 19402325, at *6 (D.S.C. Oct. 14, 2022)
(unpublished) ("Ultimately, [the p]laintiff disagrees with the

17

ALJ's evaluation of the record and her decision not to include . . . in [the p]laintiff's RFC . . . a limitation to being off task 15% or more of a workday. . . . Notably, <u>there is no opinion evidence opining that [the p]laintiff's fatigue would cause her to be off task 15% or more of a workday</u>. Rather, [the p]laintiff draws this limitation from her own interpretation of the evidence. While [the p]laintiff disagrees with the ALJ's interpretation of the evidence, it is not for the [c]ourt to substitute its judgment for that of the ALJ." (emphasis added) (internal quotation marks and parenthetical citation omitted)), <u>recommendation adopted sub nom.</u> <u>Amanda F. v. Kijakazi</u>, 2023 WL 2325895 (D.S.C. Mar. 2, 2023) (unpublished); <u>Bush v. Saul</u>, No. 2:19CV310, 2019 WL 9406535, at *11 (S.D.W. Va. Oct. 15, 2019) (unpublished) ("There is no dispute that [the plaintiff]'s allegations concerning chronic fatigue [are] corroborated by the relevant medical records. There is also no dispute that the <u>record lacks any medical opinion that [the plaintiff]'s fatigue is disabling or prevent[s] him from completing an eight-hour workday</u>." (emphasis added)), <u>recommendation adopted</u>, 2020 WL 1817303 (S.D.W. Va. Apr. 10, 2020) (unpublished).

Fourth, Plaintiff's contention that the ALJ's finding that Plaintiff's "off-task time c[ould] be accommodated by normal breaks" (Tr. 26) amounted to determining "that [Plaintiff]'s fatigue would have no vocational impact at all" (Docket Entry 11 at

6) falls short. The ALJ's decision expressly indicates that he limited Plaintiff to light work, i.e., lifting 20 pounds occasionally and 10 pounds frequently (see Tr. 26), because of chemotherapy-related neuropathy and fatigue (see Tr. 31 (containing ALJ's finding that "a light [RFC] is consistent with [Plaintiff]'s history of chemotherapy with residual neuropathy and fatigue" (emphasis added))). Moreover, the ALJ additionally limited Plaintiff to four hours of sitting at one time and only one hour of standing and walking at one time (see Tr. 26), which further accounted for Plaintiff's breast cancer treatment-related symptoms, including fatigue.[9] The context of the ALJ's decision thus convinces the Court that the ALJ included both the restriction to light work and additional limitations on the total amount of sitting, standing, and walking at one time to accommodate Plaintiff's alleged fatigue. Compare Fergison v. Berryhill, No. 1:16CV39, 2017 WL 823577, at *7 (M.D.N.C. Mar. 2, 2017) (unpublished) ("The Court acknowledges that the ALJ in the present case limited [the p]laintiff to sedentary work. However, as noted above, [the ALJ] did so in light of [the p]laintiff's

---

[9] Obesity constitutes Plaintiff's only severe physical impairment beyond her breast cancer and its treatment residuals (see Tr. 24), and the ALJ did not indicate that he imposed any exertional limitations to account for Plaintiff's obesity. (See Tr. 28 (reflecting ALJ's remarks that he "t[ook] administrative notice of [Plaintiff's] severe impairment of obesity," but that "[Plaintiff] experience[d] severe symptoms of the obesity-related impairment[] of breast cancer" (emphasis added)).)

19

musculoskeletal limitations; [the ALJ] failed to tie any physical restrictions to [the p]laintiff's fatigue." (emphasis added)).

Moreover, under the SSA's policies, normal breaks consist of a 15-minute break, a 30-minute meal break, and a second 15-minute break, such that an individual will not have to work continuously more than two hours at a time. See Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *6 (July 2, 1996) ("SSR 96-9p") (providing that eight-hour workday includes "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals"). Thus, although the ALJ's statement that Plaintiff's "off-task time c[ould] be accommodated by normal breaks" (Tr. 26) does not impose an additional limitation on Plaintiff's work-related abilities, it does reflect both the ALJ's acknowledgement that Plaintiff's fatigue caused her to experience off-task time, and his finding that such off-task time would not occur more frequently than every two hours.

Plaintiff attempts to gloss over the ALJ's limitation to light work and further reductions in the total amount of time Plaintiff could sit, stand, and walk at one time by arguing that the ALJ's focus on Plaintiff's "intact physical function . . . misses the point as [her] limitations from fatigue are non-exertional in

20

nature." (Docket Entry 11 at 9 (emphasis added) (citing Tr. 28).)
That argument lacks merit for two reasons.

First, Plaintiff supports her arguments regarding the severity
of her fatigue with citations to her own statements tying her
fatigue to _exertional_ limitations. (See _id._ at 5 (noting
Plaintiff's testimony that "she was very _weak_" and highlighting her
hearing testimony "that[, when] she tried to _walk_[,] she would be
out of breath and . . . ha[d] to rest for 20-30 minutes after
_walking_" (emphasis added) (citing Tr. 54, 59-61)); see also _id._ at
7 (citing Plaintiff's statement to provider that she "fe[lt] _weak_"
and listing Plaintiff's complaint that she "was having shortness of
breath with _overexertion_" (emphasis added) (citing Tr. 591,
1288)).) Plaintiff cannot have it both ways.

Second, despite shouldering the burden to do so, see _Pass v._
_Chater_, 65 F.3d 1200, 1203 (4th Cir. 1995) (holding that the
claimant "bears the burden of production and proof during the first
four steps of the [SEP]"), Plaintiff does not suggest what
additional "non-exertional" limitations her fatigue should have
caused the ALJ to include in the RFC, beyond a vague reference to
"breaks, time off-task _or_ absences" (Docket Entry 11 at 6 (emphasis
added)). That failure precludes relief on that front. See _Carol_
_H. v. Kijakazi_, No. 5:20CV35, 2021 WL 3561241, at *13 (W.D. Va.
Aug. 12, 2021) (unpublished) (rejecting the plaintiff's argument
that ALJ failed to account for non-exertional limitations in RFC,

where the plaintiff "did not explain what functional limitations [the] ALJ [] should have included in the RFC").

Lastly, Plaintiff's reliance on Woody, Hernandez, and McDonald fails to carry the day. (See Docket Entry 11 at 8-9 (citing Woody, 2023 WL 5745359, at *1, Hernandez, slip op., at 14-17, and McDonald slip op., at 7-12).) In Woody, the Fourth Circuit based its remand on the fact that, "although [the plaintiff] told her physicians the severity of her headaches had lessened with treatment, the record d[id] not establish whether her headaches nevertheless remained severe enough to cause her to be absent from work when they occurred." Woody, 2023 WL 5745359, at *1 (emphasis added). The record here entirely lacks the ambiguity that the Fourth Circuit found in Woody regarding the impact of Plaintiff's alleged fatigue on her ability to work. As the discussion above shows, the ALJ 1) found Plaintiff's statements about the severity of her fatigue (including her equivocal testimony that it "might" cause her "sometimes" to stay in bed "maybe" two to three days a week (Tr. 82-83)) not fully consistent with the evidence (see Tr. 28); 2) noted her ability to engage in daily activities inconsistent with disabling fatigue such as shopping, driving, handling her finances, and completing certain household tasks (see Tr. 25-26), 3) found Dr. Douglas's willingness to write Plaintiff temporarily out of work at her request not persuasive (see Tr. 29); 4) credited the state agency medical consultants' opinions that, despite

22

Plaintiff's fatigue, she remained capable of a reduced range of light work (see Tr. 31); 5) discussed Plaintiff's intact physical function, including normal strength and gait, and observed that her providers did not find Plaintiff ill-appearing (see Tr. 28-29); 6) noted her reports to providers of improvement in her symptoms related to chemotherapy and of tolerating radiation treatments well (see Tr. 29-30); and 7) crafted an RFC even more restrictive than the consultants' RFC by including further, significant reductions in the amount of time Plaintiff could sit, stand, and walk at one time, while also finding that the normal breaks of unskilled work occurring at two-hour intervals could accommodate her time off-task (see Tr. 26). Such findings clear the substantial evidence bar, explain why the ALJ did not include greater limitations in the RFC, including absence, to account for Plaintiff's alleged fatigue, and distinguish this case from Woody.

The facts in Hernandez and McDonald, unpublished cases out of a neighboring district, differ even more substantially from the instant case. In Hernandez, the ALJ did not find the plaintiff's fatigue a severe impairment, see Hernandez, slip op. at 2, and the court found it "unclear if [the ALJ] overlooked th[at] symptom" in the RFC analysis, id. at 17, which led to the conclusion that the RFC limitations to "light work with exertional, postural, manipulative, environmental, and nonexertional limitations . . . did not . . . accommodate[ the plaintiff]'s

23

reported fatigue," id. at 16. Here, the ALJ found Plaintiff's chemotherapy-related fatigue a severe impairment (see Tr. 24), and clearly did not overlook that allegation in evaluating Plaintiff's subjective reports of fatigue (see Tr. 27-28), the medical evidence relating to fatigue (see Tr. 28-30), and the opinion evidence (see Tr. 30-31). Additionally, the ALJ made clear he limited Plaintiff to a reduced range of light work because of her alleged neuropathy and fatigue. (See Tr. 28, 31.) In McDonald, the ALJ did not find the plaintiff's fatigue a severe impairment, see McDonald, slip op. at 2, and the court found that the ALJ cited to evidence "where [the plaintiff] denied fatigue," but both ignored "the other records showing [the plaintiff]'s many reports of fatigue," McDonald, slip op. at 11, and relied on daily activities that "d[id] not demonstrate a lack of fatigue and, instead, support[ed] a finding that [the plaintiff] lacked the stamina to complete tasks promptly," id. at 12. In contrast, the ALJ here found Plaintiff's fatigue a severe impairment (see Tr. 24), and neither cherrypicked the evidence relating to Plaintiff's alleged fatigue (see Tr. 27-30), nor overstated Plaintiff's ability to drive, shop in stores, handle her finances, and complete certain household tasks (see Tr. 25-26), and Plaintiff makes no argument to the contrary (see Docket Entry 11).

In light of the foregoing analysis, Plaintiff's first and only issue on review fails as a matter of law.

## III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.


                              /s/ L. Patrick Auld
                              **L. Patrick Auld**
                     **United States Magistrate Judge**

September 23, 2024